Pittsburgh, etc., Railway Company *v.* Mahoney, Administrator.

PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAIL-
WAY COMPANY *v.* MAHONEY, ADMINISTRATOR.

[No. 17,933.   Filed April 22, 1897.   Motion to Modify Mandate denied
June 10, 1897.]

CARRIERS.—*Common Carriers May Contract as Private Carriers.—
Exemption From Liability for Negligence by Contract.*—Railway
companies may contract as private carriers in transporting express
matter for express companies, and in such capacity may require
exemption from liability for negligence as a condition to the obli-
gation to carry. *pp. 199, 200.*

MASTER AND SERVANT.—*Exemption From Liability.—Express Com-
pany.—Notice to Servant.*—An employe of an express company who
goes upon the tracks of a railroad company in the course of his
employment is chargeable with notice of a contract between the
express company and the railroad company to the effect that the
former will hold the latter harmless against claims by employes
of the express company for negligence of the railroad company.
*pp. 203, 204.*

SAME.—*Release of Liability for Injuries Sustained by Servant.*—A
release by an employe of an express company of all liability for
injuries sustained by the negligence of the employer "or otherwise,"
includes the liability of the express company to hold a railroad
company, with which it does business, harmless against claims by
employes of the express company for injuries, and precludes an
action against the railroad company for causing his death, by sud-
denly closing the opening between parts of a train while he was
passing between them in discharge of his duty as employe of such
express company.   *pp. 204-206.*

APPEAL AND ERROR.—*Motion to Modify Mandate.*—A motion to mod-
ify a mandate is in the nature of a petition for a rehearing and may
be filed during the time allowed for a rehearing, notwithstanding
the other party has filed a waiver, and the opinion has been certi-
fied to the court below.   *p. 207.*

SAME.—*Motion to Modify Mandate.—Judgment on Reversal.*—Where
a judgment is reversed on account of error of the court below in
striking from answers certain contracts filed as exhibits thereof,
the court will not sustain a motion to modify the opinion so as to
give defendant a judgment instead of a new trial.   *p. 208.*

From the Howard Circuit Court. *Reversed.*

*N. O. Ross, G. E. Ross* and *Bell & Purdum,* for appellant.

*F. Winter, M. Winfield, Kistler & Kistler, Fausler & Mahoney* and *Blacklidge & Shirley,* for appellee.

HACKNEY, J.—In December, 1894, Oscar P. J. Romick was an employe of the Adams Express Company, at the city of Logansport, caring for express matter entering and going from said city on the line of the appellant's railway. Between two and three o'clock on the morning of the 13th of said month, while passing from the south side of appellant's two parallel tracks, near the passenger depot, and from the express company's storeroom to the north side of said tracks, said Romick entered between two cars of a passenger train, separated by a space of from six to ten feet, just as additional cars were driven against those of one division of said train, and he was caught and crushed between said two cars. From his injuries he died, and the appellee, charging the appellant with negligence in driving in said additional cars without warning and without watchman at the point of the cut in the train, sued the appellant for damages.

The appellant's third answer to the complaint alleged a special contract between the appellant and said express company, whereby the former agreed to carry upon its passenger trains the express matter and messengers of the latter, said express company supplying its own servants, and handling the express matter by its own agents; that as a part of said special contract the express company agreed "to assume all risks of loss or damage that may arise out of, or result from its operations under this agreement, and to save and hold harmless" the railway company "against the same, and especially to protect" it "against claims that may be made upon it for loss or

damage, either to the employes of the" express company "or the property in its charge, whether the loss may occur through the gross negligence of the" railway company "or its employes or otherwise." It was alleged also that between Romick and the express company existed the following contract: "Whereas O. P. J. Romick, the undersigned, has made application to be employed by the Adams Express Company as a servant of said company at a stipulated rate of compensation for his services, which rate said company is willing to pay only if the undersigned will assume all risks of said employment and release said company therefrom, as hereinafter set forth. Now, therefore, in consideration of such employment, to be given by said company and the compensation to be paid therefor, and in consideration of one dollar, lawful money of the United States, paid by the Adams Express Company to the undersigned, the receipt whereof is hereby acknowledged, the undersigned, for himself, his heirs, executors, administrators and assigns, hereby covenants and agrees that in no case shall said company be liable by reason of any act or negligence of its agents, servants, or employes, or any of them, or otherwise, causing any injury to his person or property or causing his death, while he shall remain in its employ, and he accepts said employment with full knowledge and notice of all the risks involved therein, which he assumes. And the undersigned hereby releases said company from any and all liability for and in respect of any such damage, injury or death, by reason of negligence or otherwise." Said contract was signed by said Romick, was duly attested and had appended thereto the following statement, made and sworn to by said Romick concurrently with said contracts:

"O. P. J. Romick, being duly sworn, says, that he is

Pittsburgh, etc., Railway Company v. Mahoney, Administrator.

the individual who executed the foregoing release and contract. That he has read or heard read the same before execution, and understands that by signing such contract he has released the Adams Express Company, and all other carriers employed by it, from all liability to him for his death or personal injury, from any cause, whether negligence of either of said companies or their servants or agents, or otherwise." Upon motion of the appellee the trial court struck out said contracts as exhibits to said answer, and the allegations of the answer pertinent to said contracts; and thereafter sustained a demurrer to said answer, which answer, denuded of said allegations, was not more than an admission of the injuries, and a denial of negligence. These rulings are urged as error, and appellee's learned counsel concede in oral argument that if the language of the contracts is sufficiently direct and comprehensive to include a release, on his part, of a right of action for injuries from the appellant's negligence, said rulings were erroneous and the judgment should be reversed. It had been urged in the briefs for appellee that a contract of release from the results of negligence was void as against public policy, and the following authorities were cited in support of that proposition. *Roesner* v. *Hermann*, 8 Fed. 782; *Railway Co.* v. *Spangler*, 44 Ohio St. 471, 8 N. E. 467; *Western, etc., R. R. Co.* v. *Bishop*, 50 Ga. 465; *Kansas Pacific R. W. Co.* v. *Peavey*, 29. Kan. 169; *Johnson, Admr.*, v. *Richmond, etc., R. R. Co.*, 86 Va. 975, 11 S. E. 829; *Louisville, etc., R. R. Co.* v. *Orr*, 91 Ala. 548, 8 South. 360; *Hissong* v. *Richmond, etc., R. R. Co.*, 91 Ala. 514, 8 South. 776; 2 Thompson on Neg. 1025; 1 Cent. Law J. 465; *Arnold* v. *Illinois Central R. R. Co.*, 83 Ill. 273; *Jacksonville, etc., R. W. Co.* v. *Southworth*, 135 Ill. 250, 25 N. E. 1093; *Purdy* v. *Rome, etc. R. R. Co.*, 125 N. Y. 209, 26 N.

E. 255; *Maney* v. *Chicago, etc., R. R. Co.*, 49 Ill. App. 105; *Newport, etc., R. R. Co.* v. *Eifort*, 15 Ky. L. Rep. 600; *Runt* v. *Herring*, 21 N. Y. Supp. 244.

These authorities probably sustain the proposition stated when applied to exemption against negligence in the discharge of a public or *quasi* public duty, such as that owing by a common carrier to an ordinary shipper, passenger, or servant. In a recent decision of this court, however, that of *Louisville, etc., R. W. Co.* v. *Keefer*, 146 Ind. 21, we recognized the well established rule that railway companies, although public or common carriers, may contract as private carriers, such as that of transporting express matter for express companies as such matter is usually carried, and in that capacity may properly require exemption from liability for negligence as a condition to the obligation to carry. See, also, *Express Cases*, 117 U. S. 1; *Hosmer* v. *Old Colony R. R. Co.*, 156 Mass. 506, 31 N. E. 652; *Bates* v. *Old Colony R. R. Co.*, 147 Mass. 255, 17 N. E. 633; *Chicago, etc., R. W. Co.* v. *Wallace*, 66 Fed. 506, 30 L. R. A. 161; *Coup* v. *Wabash, etc., R. W. Co.*, 56 Mich. 111, 22 N. W. 215, 56 Am. Rep. 374; *Forepaugh* v. *Delaware, etc., R. W. Co.*, 128 Pa. 217, 5 L. R. A. 508, 18 Atl. 503; *Hartford Fire Ins. Co.* v. *Chicago, etc., R. W. Co.*, 70 Fed. 201, 17 C. C. A. 62, 30 L. R. A. 193; *Quimby* v. *Boston, etc., R. R. Co.*, 150 Mass. 365, 23 N. E. 205, 5 L. R. A. 846; *Muldoon* v. *Seattle, etc., R. W. Co.*, 10 Wash. 311, 38 Pac. 995; *Griswold* v. *New York, etc., R. R. Co.*, 53 Conn. 371, 4 Atl. 261.

Contracts of exemption from such liability have been upheld for many years in the courts of New York without regard to the distinction between exemptions from those duties arising from the obligations of common carriers and those which the carriers are not re-

quired to perform, but may perform upon terms prescribed by them. In that state, however, impressed perhaps by the question of public policy, which in other states defeats contracts of exemption from the consequences of neglecting *quasi* public duties, it has been held that contracts of exemption must be strictly construed and with all presumptions indulged against an intention to exempt liabilities for negligence. Some of these cases are *Kenney* v. *New York, etc., R. R. Co.*, 125 N. Y. 422, 26 N. E. 626; *Brewer* v. *New York, etc., R. R. Co.*, 124 N. Y. 59, 11 L. R. A. 483, 26 N. E. 324; *Mynard* v. *Syracuse, etc., R. R. Co.*, 71 N. Y. 180.

In the early case of *Wells* v. *Steam Navigation Co.*, 2 N. Y. 204, it was held, however, that the right to contract for a restricted liability existed with reference to private carriers.

Learned counsel for the appellee insist that the rule of strict construction should be applied to the contracts before us, and that under the rule the contract between the Adams Express Company and the appellant is one of indemnity only; that the contract between Romick and the express company exempted only the express company, and extended but to the ordinary risks of the employment with that company not including the negligence of that company or of the appellant, and that in construing the contract between Romick and the express company the sworn statement of Romick should be cast out, because it does not contain his signature, and because it was not embodied in the contract. The only reason assigned in the motion for striking out the exhibits was that they were void as against public policy. This reason, upon the authorities we have cited, was not sufficient and should not have prevailed, but if the exhibits, for any other reason, should have been striken out, the ruling

was probably harmless. There was no separate speci-
fication in the motion directed to the verified state-
ment of Romick, and it went out under the general
motion. There is no contention that the exhibits
should have been stricken out because not the basis
of the answer, and, therefore, not properly capable of
becoming a part of the answer by exhibit; nor is it
claimed that they were immaterial to the answer upon
the theory thereof. The latter claim could not be
sustained under the rule recently announced in *At-
kinson* v. *Wabash R. R. Co.*, 143 Ind. 501, where it
was said that "It is settled that where averments
or matter in a pleading are in any way material, they
ought not to be struck out on motion, and the recog-
nized test of their materiality is to inquire whether
they tend to constitute a cause of action or defense;
if they do they are not irrelevant and ought not to
be suppressed." Citing authorities.

That the exhibits tended to constitute and to sup-
port a cause of defense, is without serious doubt; and,
when we observe the character of attack made upon
them in this court, their sufficiency to constitute a de-
fense is the question, and not whether they tend to do
so. In other words, the argument here is that which
would apply to a demurrer, and has no place upon the
motion. While regarding the ruling upon the motion
as an error for which the judgment should be re-
versed, the force and effect of the contracts will neces-
sarily arise upon another trial, and seems now to
arise upon the appellant's motion for judgment on the
special verdict, it having been found that Romick's
only rights upon and about the tracks and right of
way, on the occasion of his injury, were by the terms
of said two contracts, not including the verified state-
ment. In an interpretation of the language employed
in the contracts we are to be controlled by the usual

rules for the ascertainment of the intention of the parties, looking to the words in their ordinary meaning, and not by the rule of strict construction here insisted upon, and that adopted in New York, with reference to contracts restricting liability of common carriers.

As said in *Hartford Fire Ins. Co.* v. *Chicago, etc., R. W. Co., supra,* "The burden is on the party who seeks to put a restraint upon the freedom of contracts to make it plainly and obviously clear that the contract is against public policy." We have held the contracts before us not against public policy, and we must, therefore, subject them to the same tests of interpretation that other lawful contracts should receive. As between the express company and the appellant, their contract saving the latter from liability for injuries to the former's servants could not, in its very nature, be more than an assumption or indemnity, as there could be no waiver of a right belonging to another standing independent of them. But it yet remains to determine whether Romick stood independent of the contract and the parties thereto. That contract, whether an assumption, indemnity, or waiver, included the demand sued upon in this case, for it covered a *claim for damage to an employe of the express company, alleged to have occurred through the negligence of the railroad company,* taking the very words of the clause, quoted above, from that contract. By the provisions of that contract the rights of the express company were fully measured. Its only right to be upon the tracks and right-of-way, through and by its servants, was by the provisions of that contract. Its license came only from the contract, and the appellee introduced the contract in evidence to show the right of his decedent to be upon the tracks. The express company, operating by servants, was present, on the oc-

casion in question, by Romick, its agent. His rights were those of the express company, and could not be greater. He was there by the license given the express company, and he could not accept the license and reject the conditions upon which it was granted. It is said, however, that it does not appear from allegation or proof that he knew of the conditions upon which the license was given, and we are aware that it was decided in *Brewer* v. *New York, etc., R. W. Co.*, *supra*, that the express agent must have notice of the contract of exemption to be bound thereby. But with what reason can it be said that the railroad company should have given notice to the employes of the express company of the particular provisions of the contract under which they were admitted upon and permitted to use the property of the railroad company? Since the contract is the basis of rights which he assumes and exercises, it should rather be said that he must inform himself of its provisions. Unlike the theory of the holdings in New York, our court holds such contracts as standing, not upon the relationship of a common carrier, but as existing only in the private agreements of the parties. Therefore, when Romick took employment with the express company, he was obliged to know that his rights and privileges did not depend upon the law as to common carriers, nor upon public or *quasi* public duty of the railroad company, but that they rested upon private contract, to which he became subject in the performance of his duties for the express company in its relations to the appellant. He did not, therefore, occupy a position with relation to the railroad company independent of the contract between said two companies, but was chargeable with knowledge of the limitation upon the appellant's liability.

If we accept the construction of the contract be-

tween the companies that it was an assumption or an indemnity which supplied a liability to the appellant for any claim it might be required to pay on account of an injury inflicted, and we then look to the contract between Romick and the express company, we find that he there assumed all the risks of the employment, released the express company from any and all liability on account of his injury or death from negligence or otherwise, and agreed that in no case should the express company be liable for his death or injury from any act or negligence of any agent, servant, or employe of such company, or otherwise. While it is not clear that the words "agents, servants, or employes," used in this contract, related directly to the appellant, since it was but in a limited sense an "agent, servant, or employe" of the express company, yet, when we have charged the decedent with notice of the contract between the two companies, creating an obligation on the part of the express company to pay for the injury or death of its employes, the last clause in his contract is more than a general restatement of what is particularly stated before. He "released said company from any and all liability for and in respect of any such damage, injury, or death, by reason of negligence or otherwise." The words "such damage, injury, or death" refer to the stated damage to property, injury to person or to his death, but they are not confined to the special negligence previously stated, but to negligence generally or otherwise. The word "otherwise" includes such liability as might arise from any other cause or in any different manner. A contract assuming or releasing the employer from the ordinary risks of a service would be a useless ceremony, for it could but do that which the law does without it. Giving the parties credit for a purpose to create an effective and rational

contract, we would naturally look for a purpose not already accomplished, and when we consider the two contracts before us in the light of such an object or purpose we gather strength in the conclusion that the parties were contracting against unusual risks and liabilities. The word "otherwise," as it is twice employed in Romick's contract, must be deemed to include some liability not expressly mentioned or such as might arise out of the relations of the parties and within the general scope of his service and connection with them. Giving the word such force, it would reach liabilities beyond those expressly mentioned, and beyond those claims for damages, injuries, or death arising from the ordinary hazards of the service, for such claims present no liability. It would include "all the risks involved," ordinary, as well as extraordinary; and it would include the assumption by the express company in favor of the appellant. So that to treat the contract with the railroad company as a release, accepted by the decedent, and acted upon, or as an assumption or indemnity, the decedent, by his contract, took the place of the express company, assumed its liability and released it from the same. Appellee's decedent could not collect for the death a sum which the decedent, by the terms of his contract, agreed to release and assume.

We do not understand that a statement under oath may not be an affidavit without the signature of the affiant. *Turpin* v. *Eagle Creek, etc., Gravel Road Co.*, 48 Ind. 45; *Bonnell* v. *Ray*, 71 Ind. 141; 1 Ency. Pl. and Pr., p. 354, and authorities there cited.

We offer no suggestion as to the effect of the statement, with proper allegations as to the construction of the contract in case of ambiguity, but its relevancy to the defense pleaded was such that it should not have been stricken out, but should have received con-

struction upon demurrer. In view of the fact that the special verdict contains findings relative to the contracts which were not within the issues, we do not make any direction as to the motion for a *venire de novo*, and for judgment in favor of the appellant.

The judgment of the lower court is reversed, with instructions to overrule the appellee's motion to strike out parts of the answer.

### On Motion to Modify Mandate.

Hackney, J.—On the 24th day of May, 1896, the appellee filed with the clerk of this court his waiver of the right to petition for a rehearing, and, on the same day, the clerk certified to the clerk of the lower court the opinion heretofore rendered in this cause. On the 28th day of the same month the appellant filed its motion herein so to modify the mandate heretofore entered in this cause as to direct a judgment in its favor. To the latter motion the appellee enters a special appearance, and moves to dismiss the same, because, first, the opinion has been so certified down, and, second, because of the absence of merit in the motion.

Under section 674, Burns' R. S. 1894, and rule thirty-seven of this court, jurisdiction is retained in this court for sixty days from the adjudication of a cause to entertain the petition for a rehearing by either party, and this right to be further heard cannot be defeated as to one of the parties by a waiver filed by or on behalf of another. The motion to modify a mandate entered by this court in a cause, is in the nature of a petition for a rehearing, and may, at least during the time allowed for a rehearing, be filed on behalf of a party who has not waived it. The appellee's motion to dismiss will, therefore, be overruled.

The appellant's motion should not be sustained for the reason that the error upon which the reversal was made primarily was that the court below had stricken from the answer certain contracts, which were thereby taken out of the issues. But for that ruling a reply and additional evidence might have presented the case in different form. That ruling was the evidence that the trial court, from the time the ruling was made, proceeded upon an erroneous theory.

While we have construed the contracts in the light in which they were presented by the record, we feel that with an error committed so early in the case, and that error followed throughout, it would be prejudicial to the rights of the appellee to deny him an opportunity to plead to either of such contracts when answered by the appellant.

The motion to modify is overruled.